IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **BRANDY K.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. CBD-20-3749** |
| ) | |
| **KILOLO KIJAKAZI[1],** ) | |
| ) | |
| **Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Brandy K. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act ("SSA"). Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 12, Plaintiff's Alternative Motion for Remand, ECF No. 12, ("Plaintiff's Alternative Motion"), and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 13. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion. A separate order will issue.

---

[1] When this proceeding began, Andrew Saul was the Acting Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

## I. Procedural Background

On May 11, 2018, Plaintiff filed for SSI under Title XVI of the SSA, alleging disability beginning September 28, 2017.[2]  R. 12.  Plaintiff alleged disability due to anxiety, depression, bipolar disorder, ADD, fibromyalgia, pins/screws in foot (broken talus), neck surgeries, discs in back, insomnia, and myofascial pain syndrome.  R. 134, 153.  Plaintiff's claim was initially denied on August 16, 2018, and upon reconsideration on January 31, 2019.  R. 12.  An administrative hearing was held on June 10, 2020.  R. 12.  On June 19, 2020, Plaintiff's claim for SSI was denied.  R. 23.  Plaintiff sought review by the Appeals Council, which concluded on November 9, 2020, there was no basis for granting the request for review.  R. 1.  Plaintiff subsequently filed an appeal with this Court.  ECF No. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019).  The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law.  *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163-64 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).  "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence."  *Schoofield*

---

[2] Plaintiff previously filed for SSI and Disability Insurance Benefits on November 16, 2009.  R. 12.  These claims were denied on January 31, 2013.  R. 12.  The Appeals Council declined to review the decision on January 24, 2014.  R. 12, 107.  On September 22, 2014, Plaintiff filed a Title II application for disability benefits.  R. 116.  This claim was denied on September 18, 2017.  R. 126.  It appears Plaintiff did not request review by the Appeals Council from the hearing decision issued on September-18, 2017.  Instead, Plaintiff filed the instant case.

*v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164.  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

      The Court does not review the evidence presented *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

      The Commissioner shall find a person legally disabled under Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a)

Case 8:20-cv-03749-CBD   Document 14   Filed 03/16/22   Page 4 of 17

(2012). The Code of Federal Regulations outlines a five-step process ("Five-Step Analysis") that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i)(2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [416.909] or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 416.945(b)-(c). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 416.945(a).

The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the Five-Step Analysis. R. 15–23. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 11, 2018, the alleged onset date. R. 15. At step two, under 20 C.F.R. § 416.920(c), the ALJ determined that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, right knee disorder, degenerative disc disease of the lumbar and cervical spine, obesity, and bipolar disorder. R. 15. The ALJ stated that the listed impairments were severe because they "significantly limit [Plaintiff's] ability to perform basic work activities." R. 15. At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part

5

404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926)." R. 15. Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a). The ALJ discerned that Plaintiff had the following limitations:

> [Plaintiff] can lift and carry 10 pounds. [Plaintiff] can stand and walk up to two hours and sit up to six hours in an eight-hour period. [Plaintiff] can occasionally push and pull with the right lower extremity. [Plaintiff] can occasionally balance, climb ramps and stairs, and stoop. [Plaintiff] can never crouch, crawl, kneel, or climb ladders, ropes, or scaffolds. [Plaintiff] is capable of performing work involving no concentrated exposure to temperature extremes, humidity, and pulmonary irritants. [Plaintiff] is able to perform work involving no exposure to unprotected heights, moving mechanical parts and other potential workplace hazards. [Plaintiff] [is] able to perform unskilled work – i.e. work involving tasks that can be learned in 30 days or less with no more than simple, short instructions, simple work-related decision[s], and few workplace changes. [Plaintiff] can tolerate occasional interaction with supervisors, occasional/incidental interaction w [sic] co-workers, and no interaction with the public. [Plaintiff] can perform jobs that have no requirement to meet defined production quotas, such as in production line work.

R. 17. At step four, the ALJ determined Plaintiff is unable to perform her past relevant work. R. 21. At step five, with the benefit of a Vocational Expert ("VE"), the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: inspector, assembler, and toy stuffer. R. 22. The ALJ found that "Plaintiff has not been under a disability, as defined in the SSA, from May 11, 2018." R. 23.

On appeal, Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC, and the ALJ erroneously evaluated Plaintiff's subjective complaints. Pl.'s Mem. in Supp. of Pl.'s Mot. 3, 9, ECF No. 12–1. Defendant argues that substantial evidence supports the mental RFC finding and the ALJ's finding that Plaintiff's subjective complaints were not entirely consistent with the evidence. Def.'s Mem. in Supp. of Def.'s Mot. 5, 11, ECF No. 13–1. Defendant avers that "[t]he ALJ relied on the opinions of the state agency experts, who found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace but could still do simple,

routine work." *Id.* at 5. Defendant asserts that the ALJ added limitations beyond the examinations, that were favorable to Plaintiff, and thus cannot warrant remand. *Id.* Defendant also states that the ALJ cited several factors in her finding when assessing Plaintiff's subjective complaints. *Id.* For the reasons set forth below, the Court **DENIES** Plaintiff's Motion and **AFFIRMS** the ALJ's decision.

### A. The ALJ Properly Evaluated Plaintiff's RFC

Plaintiff avers that the ALJ failed to account for Plaintiff's limitations in concentration, persistence or pace in violation of *Mascio v. Colvin*.[3] Pl.'s Mem. in Supp. of Pl.'s Mot. 5–9. Specifically, Plaintiff argues that the ALJ failed to properly assess Plaintiff's limitations, by failing to perform a function-by-function assessment of Plaintiff's ability to perform the mental and physical demands of work. *Id.* at 6. Plaintiff alleges that the ALJ erred by "fail[ing] to provide adequate explanation of the evidence upon which he relied to make this determination and failed to provide any explanation of what he meant by the term 'defined production quotas, such as in production line work.'" *Id.* This Court disagrees.

Under *Mascio*, the Fourth Circuit held that an RFC assessment must account for the ALJ's step three finding of moderate limitations in concentration, persistence, and pace beyond limiting a claimant to performing only "simple, routine tasks." *Mascio,* 780 F.3d at 638. This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). The Fourth Circuit reiterated that *Mascio* "did not impose a

---

[3] The Court has summarized Plaintiff's arguments for conciseness.

categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (finding that "[a]n ALJ can explain why [a plaintiff]'s moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in the claimant's RFC.").

In making the RFC assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 416.945(a). The ALJ likewise must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.).

The Commissioner employs a VE to offer evidence on whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. § 416.960(b)-(c) (2011). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. § 416.960(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). A hypothetical question is "unimpeachable if it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (citing *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005)) (internal

quotation marks omitted). The ALJ is afforded substantial leeway in the formulation of hypothetical questions. *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000) (citing *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999)).

Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. *Thomas*, 916 F.3d at 312. The second component, the ALJ's logical explanation, is just as important as the other two. *Id.* Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion. *Id.* (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

Plaintiff points to the Court's opinion in *Thomas*, where the Court found that the use of the terms "production rate or demand pace," was a basis for remand, as the ALJ did not define the terms "production rate pace or demand pace." *Id.* The Court in *Thomas* explained that:

> [T]he ALJ stated Thomas could not perform work, requiring a production rate or demand pace, [and thusly the ALJ] did not give us enough information to understand what those terms mean. *Id.* [Further], [t]hat makes it difficult, if not impossible, for us to assess whether their inclusion in Thomas's RFC is supported by substantial evidence.

*Id. See Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding that the ALJ's use of the term "non-production oriented work setting," which is not defined by the regulations or case law or otherwise self-explanatory, prevented meaningful review because the reviewing court could not determine what the ALJ meant by the term or whether there was a "logical bridge" between the evidence in the record and the ALJ's inclusion of the limitation).

Plaintiff also points to cases in this Court that she argues are similar to *Thomas*, in that they were remanded for the reasons she alleges. *See e.g.*, *Dwayne D. v. Berryhill*, No. CV TMD 17-3809, 2019 WL 1317234, at *5 (D. Md. Mar. 22, 2019) (finding that the ALJ's terms "no production rate for pace of work," "'ma[de] it difficult, if not impossible,' for the Court to assess

whether substantial evidence supports the inclusion of 'no production rate for pace of work' in the ALJ's assessment of Plaintiff's RFC."); *Ansah v. Saul*, No. 1:19-CV-02503-JMC, 2021 WL 962702, at *4 (D. Md. Mar. 12, 2021) (finding that the ALJ's failure to define "[no] strict production quota[s]," required remand.); *Da'Quan E. v. Saul*, No. CV TMD 20-1091, 2021 WL 1164225, at *6 (D. Md. Mar. 26, 2021) (finding that the ALJ's terms "without fast pace or strict production quotas," "did not give [the Court] enough information to understand what those terms mean[t]."); *Darrel A. v. Saul*, No. CV CBD-19-2351, 2021 WL 927457, at *9 (D. Md. Mar. 10, 2021) (the ALJ's use of the term "production quotas," made it difficult to ascertain whether the ALJ's RFC was supported by substantial evidence.); Pl.'s Mem. in Supp. of Pl.'s Mot. 6–9.

At step three of the analysis, the ALJ found that Plaintiff suffered from moderate difficulties in concentration, persistence, or maintaining pace. The ALJ stated:

> With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation. As discussed above, [Plaintiff] has alleged significant issues in this area (internal citations omitted). However, again, the mental status examinations do not indicate attention and concentration issues. No issues were demonstrated at the hearing. Again, even taking into consideration [Plaintiff's] allegations, the totality of the evidence supports only moderate limitations. I have limited [Plaintiff] to unskilled work that does not require production quotas or workplace changes to fully accommodate [Plaintiff] in this area.

R. 16. The ALJ found that Plaintiff had the RFC to perform work at the sedentary exertional level. R. 17. Considering Plaintiff's mental impairments, the ALJ concluded that:

> [Plaintiff] [is] able to perform unskilled work – i.e. work involving tasks that can be learned in 30 days or less with no more than simple, short instructions, simple work-related decision[s], and few workplace changes. [Plaintiff] can tolerate occasional interaction with supervisors, occasional/incidental interaction w [sic] co-workers, and no interaction with the public. [Plaintiff] can perform jobs that have no requirement to meet defined production quotas, such as in production line work.

R. 17. Unlike *Thomas*, *Perry*, and the other cases Plaintiff referenced above, the ALJ here used terms "'that are subject to common understanding,' as the term 'defined production quotas such

as in production line work' 'plainly relates to the rigidity of the occupations' production requirements—whatever those requirements may be.'" *Delonte C. v. Kijakazi*, No. CV TMD 20-2436, 2021 WL 4391089, at *5 (D. Md. Sept. 24, 2021).  The terms the ALJ used in this case, are exactly the same terms the ALJ used in *Delonte*, where the Court affirmed the ALJ's decision.  *Id.*  Thus, the Court finds no reason to disturb the ALJ's decision, and the Court finds that the inclusion of the terms does not frustrate meaningful review.  *Id.*; *see also Kenneth L. v. Kijakazi*, No. CV SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (where the court found that the terms "no strict production quotas," "contain terms that are subject to common understanding . . . [and thus] plainly relates to the rigidity of the occupations' production requirements—whatever those requirements may be."  The court also found that "inclusion of th[e] term[s] in the ALJ's RFC determination d[id] not frustrate appellate review."); *Sara H. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-20-3358, 2021 WL 4426875, at *2 (D. Md. Sept. 27, 2021) (finding that the use of the word "strict" "indicates concern about the rigidity of the occupations' production pace requirements—whatever those may be.");  *Shuronn S. v. Kijakazi*, No. CV TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022) (finding that the term "strict production quotas," **"**plainly relates to the rigidity of the occupations' production requirements—whatever those requirements may be," and thus did not frustrate appellate review.).

      The ALJ's decision also complies with *Mascio*'s other requirements.  The ALJ included a limitation to address Plaintiff's moderate difficulties in "concentration, persistence, or pace," by finding that "[Plaintiff] can perform jobs that have no requirement to meet defined production quotas, such as in production line work."  R. 17.  As stated above, this limitation does not frustrate appellate review.  This explanation counters Plaintiff's last argument – that the ALJ

11

failed to explain how Plaintiff could be on task for 85% of the day. Pl.'s Mem. in Supp. of Pl.'s Mot. 8–9. The ALJ's requirement under *Mascio*, is to account for Plaintiff's moderate limitations in concentration, persistence, or pace, in the RFC, which he did here by the above-referenced limitation. Thus, this argument is rejected.

The ALJ also cited evidence in the record to explain his reasoning as to Plaintiff's mental limitations in the RFC. The ALJ found, that Plaintiff's examinations, "were generally completely normal with no attention and concentration issues noted." R. 20. The ALJ also noted that Plaintiff's examinations, "indicate a stable mood, intact focus, and adequate sleep." Further, the ALJ found that Plaintiff's status examinations, "were normal with no memory or organization issues noted." *Id.* Thus, the ALJ built "an accurate and logical bridge," by providing substantial evidence for his reasoning. Accordingly, remand is not warranted on this issue.

### B. The ALJ Properly Evaluated Plaintiff's Subjective Complaints

In evaluating a claimant's subjective complaints pursuant to 20 C.F.R. § 416.929, the ALJ is required to follow a two-step process. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (alteration in original) (citations omitted). First, the ALJ must find that objective medical evidence is present to show that a claimant has a medical impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929 (b). At the second step, the ALJ must evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which it affects her ability to work. *Id.* To assess the intensity, persistence, and limiting effects of the symptoms, the ALJ considers all the evidence presented, including *inter alia*, a claimant's daily activities; precipitating and aggravating factors; treatment a claimant received; the type, dosage, effectiveness, and side effects of any medication; and any

other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* The ALJ will also evaluate a claimant's statements in relation to the objective medical evidence and other evidence, in deciding whether she is disabled. *Id.*

The second step requires the ALJ to assess the credibility of the claimant's statements about her symptoms and their effect on her ability to perform work activities. *E.g.*, *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citing 20 C.F.R. § 416.929(c)(4)). A claimant's subjective statements about pain intensity or persistence "cannot be discounted solely based on objective medical findings." *Id.* However, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her symptoms can reasonably be accepted. 20 C.F.R. § 416.929(c)(4). The Fourth Circuit makes clear that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996).

Plaintiff claims the ALJ applied an improper standard in evaluating Plaintiff's subjective complaints. Pl.'s Mem. in Supp. of Pl.'s Mot. 9. Plaintiff asserts that the ALJ, "specifically rejected [Plaintiff's] testimony regarding her subjective complaints on the basis that her complaints were not supported by objective evidence." *Id.* at 14. This argument also lacks merit.

In the instant case, the ALJ found:

> [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

R. 19. The ALJ considered Plaintiff's complaints, activities of daily living, treatment records, medication compliance, Plaintiff's examinations, Plaintiff's work history, medical opinion evidence, and the prior ALJ decisions. R. 18–21. The ALJ also considered Plaintiff's testimony, as well as thoroughly descriptive paragraphs of Plaintiff's subjective complaints, along with other evidence in the record and noted inconsistencies.

For instance, regarding Plaintiff's back and neck pain, the ALJ noted that Plaintiff received lumbar medical branch blocks in 2017, and although Plaintiff reported continued issues, "[Plaintiff] was advised to maintain normal activities and advised against bedrest." R. 19. The ALJ also noted that "[Plaintiff's] physical examination showed decreased range of motion and tenderness of the lumbar spine but her stability, strength, motor function, and sensation remained normal." *Id.* The ALJ stated that although her physical examination remained the same, in October 2018, Plaintiff reported that her pain was stable with only intermittent flare-ups. *Id.* The ALJ found that Plaintiff's routine, conservative care for her back and neck pain, with generally normal physical examinations showing intact sensation, strength, and stability, did not support Plaintiff's allegations and testimony. *Id.* The ALJ determined that "[d]espite [Plaintiff's] reports and testimony of significantly limited functionality, the record confirms [Plaintiff] was able to help care for her grandmother and grandson in 2019." *Id.* The ALJ concluded that Plaintiff's "significant limitations of sitting, standing, and walking are not fully supported by th[e] treatment and physical examinations." *Id.* Nevertheless, the ALJ recognized that the record "indicate[d] complaints of pain, tenderness, and demonstrate[d] some limited range of motion." *Id.* Thus, the ALJ "limited [Plaintiff] to sedentary work with additional push and pull, postural, and environmental restrictions to accommodate both [Plaintiff's] subjective complaints and the objective findings." *Id.* at 19-20.

Similarly, when evaluating Plaintiff's knee complaints, the ALJ noted that "the physical examination showed only minimal edema with only some range of motion limitations." *Id.* at 20. Even so, the ALJ considered Plaintiff's subjective complaints and stated, "the limitations to sedentary work with the additional postural and push/pull limitations fully accommodates these impairments." R. 20. As for Plaintiff's COPD, the ALJ noted that "there are little to no complaints in the record of respiratory issues, and [Plaintiff] continues to smoke cigarettes." *Id.* Regardless, the ALJ took Plaintiff's COPD into account when determining her RFC, and included exertional, environmental, and pulmonary restrictions. *Id.* Lastly, the ALJ noted Plaintiff's obesity and found that "Plaintiff may be more limited mentally and physically than indicated by the objective evidence." *Id.* at 20. The ALJ also found "[Plaintiff] can reasonably be expected to experience some degree of functional limitation due to her weight." *Id.* In any event, the ALJ stated that any limitation arising from Plaintiff's obesity, was reflected in the RFC. *Id.*

As for Plaintiff's mental complaints, the ALJ found that the record did not support Plaintiff's allegations. R. 20. Specifically, the ALJ found that "Plaintiff's evaluations indicate a stable mood, intact focus, and adequate sleep;" "[Plaintiff's] mental status examinations were normal with no memory or organization issues noted;" "[i]nto 2020, [Plaintiff's] mood remained stable with intact focus;" "[Plaintiff's] anxiety and depression were noted as controlled, and [Plaintiff] was stable on medication;" and "[Plaintiff's] complaints of life-long focus issues are not supported by the record, her mental status examinations, and her work history." *Id.* After considering Plaintiff's mental complaints, the ALJ concluded that "[e]ven taking into consideration [Plaintiff's] complaints and reports of symptoms related to anxiety and depression, the totality of the evidence supports no more than moderate limitations in functionality. . .". *Id.*

Nonetheless, the ALJ accommodated Plaintiff's moderate limitations by limiting Plaintiff to "unskilled work with additional social and production restrictions." *Id.*

> The ALJ also cited the medical opinions. R. 21. The ALJ found that:
>
> The initial findings and opinions of the State agency reviewing physicians (internal citations omitted) is partially persuasive. The finding that [Plaintiff] requires postural, environmental, and mental restrictions is consistent with and supported by [Plaintiff's] diagnosed impairments, physical examinations, education and work history, and mental treatment.

R. 21. Even still, the ALJ noted that the finding that Plaintiff is capable of doing light level work, "d[id] not take into account the combination of [Plaintiff's] physical impairments, [Plaintiff's] obesity, and the impact of [Plaintiff's] mental impairments on her perception of pain." The ALJ found that the findings at the reconsideration level were more persuasive, stating, "the limitation to sedentary work is more fully supported by the totality of the evidence." *Id.* The ALJ also stated that he provided "more limitations to fully account for [Plaintiff's] testimony and subsequent treatment." *Id.* The ALJ concluded that the previous decisions from 2013 and 2017, were generally persuasive, as they limited Plaintiff to sedentary, unskilled work with additional postural and exertional limitations, which the ALJ found was consistent with and supported by the medical evidence of record. *Id.*

The ALJ provided an extremely extensive review of Plaintiff's subjective complaints and the evidence in the record. The ALJ provided a limitation for every one of Plaintiff's severe limitations. The ALJ also provided a limitation for all of Plaintiff's subjective complaints, even without any complaints in the record, as with Plaintiff's COPD. Accordingly, the record shows that the ALJ considered Plaintiff's complaints, objective evidence, and other evidence in the record. The ALJ did not require Plaintiff to prove her subjective complaints by the objective medical evidence and did not rely solely on the objective evidence to discredit Plaintiff's

subjective complaints. The ALJ considered Plaintiff's limitations and accounted for them in the RFC. Since the ALJ considered Plaintiff's complaints, along with the available evidence and provided sufficient explanation for her decision, the Court finds that the ALJ did not err when evaluating Plaintiff's subjective complaints.

### IV. Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, and **GRANTS** Defendant's Motion.

March 16, 2022 /s/
Charles B. Day
United States Magistrate Judge

CBD/pjkm